**Case No. 25-7082**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

**BARBARA BARRICK,
as Special Administrator of the
ESTATE OF BOBBY DALE BARRICK, deceased,**
*Plaintiff/Appellant,*

**v.**

**DEPUTY MATTHEW KASBAUM,
DEPUTY QUENTIN LEE,
and WARDEN MARK HANNAH,**
*Defendants/Appellees.*

---

**Appeal from the United States District Court for the
Eastern District of Oklahoma
Case No. 23-CV-00129-JFH-GLJ**

**The Honorable John F. Heil, III**

---

**RESPONSE BRIEF OF DEFENDANT-APPELLEE
MARK HANNAH**

---

**Devan Pederson, OBA #16576
Jesse Ogle, OBA #34275
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21ST Street
Oklahoma City, Oklahoma 73105
T: (405) 521-3921 | F: (405) 521-4518**
*Attorney for Defendant-Appellee Mark Hannah*

**March 23, 2025**

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

**RESPONSE BRIEF OF DEFENDANT/APPELLEE MARK HANNAH**..........1

**STATEMENT OF PRIOR OR RELATED APPEALS** .......................................1

**JURISDICTIONAL STATEMENT**.....................................................................1

**NECESSITY OF ORAL ARGUMENT** ................................................................2

**STATEMENT OF ISSUE PRESENTED FOR REVIEW** ...................................2

**STATEMENT OF THE CASE**...........................................................................2

1.   **The March 13, 2022 Encounter** ..............................................................3

   A.  **Facts Most Relevant to This Appeal:** ........................................................5

   B.  **Procedural History** ....................................................................................6

**SUMMARY OF THE ARGUMENT** ..................................................................11

**STANDARD OF REVIEW** ................................................................................12

**ARGUMENTS AND AUTHORITIES**................................................................14

   I.   **The district court properly granted summary judgment in favor of Defendant Hannah, as he was not acting under the color of state law.**..........14

   II.   **Specific responses to Plaintiff's arguments.** ..........................................17

   a.   **The District Court did not "ignore pertinent facts" and the Court's conclusion that Defendants were not acting under color of state law was supported by undisputed material facts.** ....................................................17

   b.......**The District Court properly found that "neither Kasbaum, Lee, [n]or Hannah were exercising power possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law."** ...................................................................................................................19

   c.   **The District Court properly held that, as a matter of law, in the absence of tribal authority, state law enforcement officers do not have jurisdiction to arrest Indians in Indian country.** .........................................20

   III.   **As a matter of tribal sovereignty, the Bill of Rights is not the source of civil rights for tribal members and does not apply to tribes or to tribal actors.**...............................................................................................................23

**IV.    Tribes control the issuance of tribal police commissions.** ....................23

**V.   The existence *vel non* of other remedies available to tribal citizens outside of § 1983 is immaterial to the statutory-interpretation issue presented here.** ................................................................................24

**CONCLUSION** ................................................................................26

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Adler v. Wal-Mart Stores, Inc.*,
  144 F.3d 664 (10th Cir. 1998)............................................................... 13

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)............................................................................. 13

*Becker v. Bateman*,
  709 F.3d 1019 (10th Cir. 2013)............................................................ 18

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
  757 F.3d 1125 (10th Cir. 2014)............................................................ 11

*Burrell v. Armijo*,
  456 F.3d 1159 (10th Cir. 2006).............................................................. 11

*Conaway v. Smith*,
  853 F.2d 789 (10th Cir. 1988).............................................................. 13

*Dry v. City of Durant*,
  242 F.3d 388 (10th Cir. 2000)............................................................... 15

*Fye v. Okla. Corp. Comm'n*,
  516 F.3d 1217 (10th Cir. 2008).............................................................. 13

*Griffin v. State of Md,*
378 U.S. 130, 132 (1964)....................................................................... 15

*Logsdon v. United States Marshal Serv.*,
  91 F.4th 1352 (10th Cir. 2024) ............................................................. 25

*Martinez v. S. Ute Tribe of S. Ute Rsrv.*,
  249 F.2d 915 (10th Cir. 1957).............................................................. 23

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) ............................................................. 11, 21, 25

*Native Am. Church of N. Am. v. Navajo Tribal Council,*
  272 F.2d 131 (10th Cir. 1959) ................................................................ 23

*Nevada v. Hicks,*
  533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) .................................. 21

*Oklahoma v. Castro-Huerta,*
  597 U.S. 629 (2022) ...................................................................... 21

*Polk Cnty. v. Dodson,*
  454 U.S. 312 (1981) ...................................................................... 11

*R.J. Williams Co. v. Ft. Belknap Hous. Auth.,*
  *719 F.2d 979 (9th Cir. 1983)* ............................................................ 11

*Ross v. Neff,*
  905 F.2d 1349 (10th Cir. 1990) ............................................. 11, 12, 14, 16, 21, 22

*Sanchez v. Surratt,*
  682 Fed. Appx. 679 (10th Cir. 2017) ...................................................... 11

*Santa Clara Pueblo v. Martinez,*
  436 U.S. 49 (1978) ........................................................................ 23

*United States v. Classic,*
  313 U.S. 299 (1941) ........................................................................ 9

*Walden v. The City of Duncan, Oklahoma, et al.,* No. 76,
  CIV-23-1075-PRW (W.D. Okla. September 22, 2025) ........................................ 9

*West v. Atkins,*
  487 U.S. 42 (1988) ........................................................................ 14

*Yousuf v. Cohlmia,*
  741 F.3d 31 (10th Cir. 2014) .......................................................... 13, 17

## STATUTES

18 U.S.C. § 1151 ............................................................................ 6

18 U.S.C. § 1152 ........................................................................... 21

25 U.S.C.A. §§ 1301-05 ...................................................................... 23

28 U.S.C. § 636 .............................................................................................. 7

28 U.S.C. § 1291 ............................................................................................. 1

28 U.S.C. § 1331 ............................................................................................. 1

42 U.S.C. § 1983 ............................................ 2, 7, 9, 11, 12, 14, 16, 24, 25

11 O.S. § 34-103(C) ...................................................................................... 19

11 O.S. § 334-103(C) .................................................................................... 19

## CONSTITUTION

Article II, Section 12, of the Oklahoma Constitution ........................................... 20

Okla. Stat., Tit. 74, § 1221 (2019 ................................................................ 25

## RULES

10th Cir. R. 25.3 ........................................................................................... 27

10th Cir. R. 25.5 ........................................................................................... 27

10th Cir. R. 32(B) ......................................................................................... 27

10th Cir. R. 43.1 ............................................................................................. 2

Fed. R. App. P. 24(a)(5) ............................................................................... 27

Fed. R. App. P. 32(a)(5) ............................................................................... 27

Fed. R. App. P. 32(a)(7)(B)(i) ...................................................................... 27

Fed. R. App. P. 32(f) ..................................................................................... 27

Fed. R. App. P. 34(a) ...................................................................................... 2

Fed. R. App. P. 36(a)(6) ............................................................................... 27

Fed. R. Civ. P. 56 .......................................................................................... 17

Fed. R. Civ. P. 56(a) ..................................................................................... 13

## **RESPONSE BRIEF OF DEFENDANT/APPELLEE MARK HANNAH**

Defendant/Appellee, Tribal Police Officer of the Choctaw Nation of Oklahoma and Oklahoma Department of Wildlife Game Warden Mark Hannah ("Defendant" or "Hannah"), submits this Response Brief to the Opening Brief filed by Plaintiff/Appellant, Barbara Barrick.

### **STATEMENT OF PRIOR OR RELATED APPEALS**

There are no prior or related appeals.

### **JURISDICTIONAL STATEMENT**

Defendant agrees that the District Court has jurisdiction over any alleged federal claim, pursuant to 28 U.S.C. § 1331. The District Court entered summary judgment in favor of defendants on all claims on September 29, 2025. (App. Vol. 20 at 3963). [1] Defendant does not contest that Plaintiff filed a timely notice of appeal on October 10, 2025. (App. Vol. 20 at 3964). This Court has jurisdiction under 28 U.S.C. § 1291 because the appeal is taken from a final decision of a United States district court within the Tenth Circuit, specifically, the United States District Court for the Eastern District of Oklahoma.

---

[1] References to the Plaintiff's filed Appendix (Volumes 1-13) shall be abbreviated as "App. Vol."

1

## <u>NECESSITY OF ORAL ARGUMENT</u>

Pursuant to Fed. R. App. P. 34(a) and 10th Cir. R. 43.1, Defendant requests this case be submitted with oral argument because doing so would materially assist the Court in its determination.

## <u>STATEMENT OF ISSUE PRESENTED FOR REVIEW</u>

Issue: Color of State Law

U.S. Supreme Court precedent holds that a 42 U.S.C. § 1983 defendant acts under color of state law only when the defendant has exercised power possessed by virtue of state law and when the defendant's wrongdoing was made possible only because of state law authority. Under Tenth Circuit precedent, state officers have no state-law power over Indians in Indian Country. In this case, Appellee Hannah is a state officer who is also commissioned as a tribal police officer under the authority of the tribe. In arresting a member of the tribe from which he held a tribal commission, Appellee Hannah did not exercise power possessed by virtue of state law—he had none under Circuit precedent. Nor did he purport to do so. Under these circumstances, did Appellee Hannah act under color of tribal law as the district court held, or did he act under color of state law, as Appellant asserts?

## <u>STATEMENT OF THE CASE</u>

This case concerns the March 13, 2022, encounter between Mr. Bobby Barrick, an Indian, and duly appointed Tribal Police Officers of the Choctaw

2

Nation of Oklahoma, which occurred on tribal land. (App. Vol. 20 at 3882-3885).

### 1. The March 13, 2022 Encounter

On March 13, 2022, in Eagletown, Oklahoma, located in the Eastern District of Oklahoma and within the boundaries of Choctaw Nation, Defendant Kasbaum, a Sergeant with the McCurtain County Sheriff's Office, responded to a call at 4:30 a.m. to help Bobby Dale Barrick with his truck that was stuck in mud. (App. Vol. 20 at 3953). While Bobby Barrick appeared to be under the influence of some intoxicating substance, Defendant Kasbaum did not make an arrest because Barrick's vehicle was immobilized and he was otherwise cooperative. *Id*. at 3954.

That same evening, Barrick was dropped off at Lori's Corner Store in Eagletown, Oklahoma. *Id*. Although the store was closed, Barrick entered through an open back door. *Id*. Contractors, who were working inside the store at the time, chased Barrick as he broke through the glass front door of the store and ran out onto Highway 70. (App. Vol. 20 at 3954). On Highway 70, Barrick got into the cab of an occupied semi-tractor trailer rig. *Id*. The truck driver shut down the rig and Barrick exited the cab of the truck. *Id*. Barrick then approached a vehicle behind the semi-tractor trailer occupied by a woman and children. *Id*. Barrick punched at the car window, grabbed onto the side view mirror, and then ultimately jumped onto the car as the woman drove. *Id*. With Barrick still on top

of the vehicle, the woman drove her vehicle into the parking lot of Lori's Corner Store. *Id*. The contractors then gained control of Barrick and hog-tied him with his hands behind his back and his ankles bound together. *Id*.

The Muskogee County Sheriff's Office ("MCSO") was notified of the incident and Defendants Kasbaum and Lee were dispatched to the scene. *Id*. In addition to being MCSO officers, Defendants Kasbaum and Lee were also cross-commissioned officers with the Choctaw Nation. *Id*. Defendants Kasbaum and Lee arrived on the scene in MCSO vehicles and wearing MCSO uniforms. *Id*. Upon arriving to the scene, Defendants Kasbaum and Lee saw that Barrick had been hog-tied and was yelling for help shouting, "they're going to kill me." *Id*. Defendants Kasbaum and Lee removed Barrick's bindings and applied handcuffs. *Id*. Barrick was then able to stand and speak with the officers. *Id*. Defendant Kasbaum requested Emergency Medical Services ("EMS") to respond to the scene as it was apparent that Barrick had some injuries related to being hog-tied. *Id*. Officers then located Barrick's Choctaw Nation Membership Card in his pocket, confirming his status as an Indian. (App. Vol. 20 at 3955). Defendant Kasbaum and Lee then placed Barrick in the back of Defendant Lee's patrol vehicle while they continued their investigation. *Id*.

Around this time, Defendant Mark Hannah, was at home cleaning the outside of his patrol vehicle. He was not on patrol that day. While Hannah was

4

off-duty at home, he was informed by his neighbor that there was a fight in progress at Lori's Corner Store in Eagletown, Oklahoma. Hannah, on his own volition, immediately headed to Lori's Corner Store. (App. Vol. 4 at 829-833).

Defendant Hannah, an Oklahoma Game Warden and Tribal Police Officer of the Choctaw Nation with a Special Law Enforcement Commission, then arrived on the scene. *Id*. Once Defendant Hannah arrived, he and Defendants Kasbaum and Lee attempted to remove Barrick from the back of Defendant Lee's patrol vehicle to be treated by an Emergency Medical Technician ("EMT"). (App. Vol. 20 at 3955). During this time, Barrick was noncompliant and combative with the officers, who attempted various methods to subdue him and remove him from the vehicle. *Id*. Barrick then lost consciousness and EMS was able to assess him and transport him to McCurtain Memorial Hospital. It was there he was placed on a ventilator before being transferred to Paris Regional Medical Center where he ultimately died. *Id*. Barrick's cause of death was listed as pneumonia with acute respiratory failure due to acute kidney injury, with contributing factors of bipolar disorder, schizophrenia, and hypertension. *Id*.

### A. Facts Most Relevant to This Appeal:

The core issue before the Court is whether Defendant Hannah was acting pursuant to his authority as a tribal officer or a state officer. The undisputed, material facts relevant to such a question are as follows:

1. The site of this incident, Lori's Corner Store, is in Eagletown, Oklahoma. Eagletown is located in McCurtain County, Oklahoma within the boundaries of the Choctaw Reservation and is within "Indian country". 18 U.S.C. § 1151; (App. Vol. 1 at 232-233; App. Vol. 4 at 810, 815)

2. Bobby Barrick was a member of the Native American community and a Choctaw citizen with a Certificate of Degree of Indian Blood (CDIB). Bobby Barrick is a member of the Choctaw Nation of Oklahoma. (App. Vol. 1 at 234; App. Vol. 4 at 811-812, 815).

3. Defendant Hannah is a duly appointed and sworn Tribal Police Officer of the Choctaw Nation of Oklahoma. (App. Vol. 1 at 235; App. Vol. 4 at 815).

4. Defendant Hannah only had the jurisdiction to arrest and attempt to seize Bobby Barrick due to his cross-commissioned status. (App Vol. 4 at 792-795; App. Vol. 20 at 3952-3962).

## B. Procedural History

On April 20, 2023, Plaintiff Barbara Barrick (hereafter, "Plaintiff"), as special Administrator for the Estate of Bobby Dale Barrick, deceased, sued the Sheriff of McCurtain County, Oklahoma, McCurtain County Sheriff's Office ("MCSO") Deputies Matthew Kasbaum, Quentin Lee, and Kevin Story, as well

as Oklahoma Game Warden and Cross-Deputized Choctaw Nation Tribal Police Officer Mark Hannah. Plaintiff originally alleged various Fourth Amendment violations pursuant to 42 U.S.C. § 1983, as well as municipal liability as to the Sheriff of McCurtain County. (App. Vol. 1 at 26-48).

On September 5, 2023, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636. On November 7, 2023, Defendant Hannah moved for judgment on the pleadings asserting that Plaintiff cannot state a 42 U.S.C. § 1983 claim against him as he was not acting under the color of state law. (App. Vol. 1 at 226-237). The District Court denied such Motion, finding that: (1) the Complaint was devoid of information to show Defendant Hannah was not acting under the color of state law, and (2) taking judicial notice of the facts that Defendant Hannah presented in his motion would be improper at that time. (App. Vol. 2 at 290-297, 310).

At the close of discovery, Sheriff Clardy and Defendants Hannah, Kasbaum, Lee, and Storey moved for summary judgment. (App. Vol. 2 at 311; App. Vol. 3 767; App. Vol. 4 771-963).    The Magistrate Judge set the motions for oral argument, which was held on June 11, 2025. (App. Vol. 20 at 3874). At the hearing, the parties presented argument whether individual defendants were acting under of color of state law. *Id.* At the hearing, Plaintiff agreed to dismiss

all claims against the Sheriff and Defendant Storey with prejudice and a stipulation of dismissal with prejudice as to these parties was filed the same day. (App. Vol. 20 at 3875).

After hearing oral argument and taking the motions under advisement, United States Magistrate Judge Gerald L. Jackson recommended that the individual officers' motions for summary judgment be granted because **they were acting under tribal, not state, law**. (App. Vol. 20 at 3879-3892). Judge Jackson's Report and Recommendation identified the relevant question in such cases to be "whether the officers were acting under the color of tribal law or state law, or both, i.e., which official duties took precedence." (App. Vol. 13 at 3890). While acknowledging the officers may wear two hats simultaneously, the Magistrate Judge found "the question is one of primacy, not numerosity." (App. Vol. 13 at 3888). Magistrate Jackson found that the overriding question is which official duties—those of Tribal or state law—took precedence. (App. Vol. 13 at 3890) Judge Jackson stated that because the officers had jurisdiction to arrest the tribal member only by virtue of their cross-commissioning by the Tribe, they were exercising authority possessed by virtue of tribal law. *Id.* at 3891. Jackson concluded that, "[d]espite the uniforms they were wearing, the law is clear that any law enforcement authority over Bobby Barrick on reservation land is derived from the Choctaw Nation, not the State of Oklahoma." *Id.* As such, the officers

8

were not, and could not, have been exercising power "possessed by virtue of state law and made possible only because the [alleged] wrongdoer is clothed with the authority of state law," and therefore, there was no 42 U.S.C. § 1983 claim. (App. Vol. 20 at 3892) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

On July 23, 2025, Plaintiff filed an objection to Judge Jackson's Report and Recommendation. (App. Vol. 20 at 3895-3912). In her objection, Plaintiff continued to rely on cases that address private v. state action (i.e., private v. government authority). *Id.* On August 6, 2025, Defendants Hannah, Kasbaum, and Lee filed responses to Plaintiff's objection to the Report and Recommendation. (App. Vol. 20 at 3914-3934). Defendants argued that Plaintiff's objection to the Report and Recommendation did not bring to light any significant facts or law that would convert the clearly established determination that Defendants' law enforcement authority was derived from the Choctaw Nation during the encounter with an Indian in Indian country. *Id.* Defendants further asserted that Plaintiff rehashed faulty arguments she had already made that were thoroughly considered by Judge Jackson when he wrote his R&R. *Id.* On August 18, 2025, Plaintiff filed a reply supporting her objection to the Report and Recommendation. (App. Vol. 20 at 3935-3940). On September 23, 2025, Defendants filed a notice of supplemental authority. (App. Vol. 20 at 3941-3951). The Defendants pointed to *Walden v. The City of Duncan, Oklahoma, et al.,* No.

9

76, CIV-23-1075-PRW (W.D. Okla. September 22, 2025). *Id.* In *Walden*, United States District Judge Patrick R. Wyrick held that an officer who was cross-commissioned with the Chickasaw Lighthorse Special Law Enforcement, and who arrested an Indian in Indian Country, was acting under color of tribal law, not state law. *Id.*

On September 29, 2025, United States District Judge John F. Heil, III submitted his Opinion and Order. (App. Vol. 20 at 3952-3962). Judge Heil overruled Plaintiff's objection, accepted and adopted the Report and Recommendation by the Court, and granted Defendants' motions for summary judgment. *Id.* Judge Heil thoroughly addressed each of Plaintiff's five objections to the Magistrate's R&R[2]. *Id.* Judge Heil concluded that "because Defendant was an Indian, the arrest took place in Indian country, and Defendants were cross-deputized, Defendants were necessarily acting under color of Tribal law in effecting Bobby Barrick's arrest." (App. Vol. 20 at 3959). On September 29, 2025, United States District Judge John F. Heil, III entered his judgment disposing of the case and ruling in favor of Defendant Matthew Kasbaum, Defendant Quentin Lee, and Defendant Mark Hannah and against Plaintiff Barbara Barrick. (App. Vol. 20 at 3963).

---

[2] Judge Heil twice noted that, "Plaintiff does not dispute the Magistrate Judge's factual findings, but rather objects to the Magistrate Judge's failure to consider all facts before it." (App. Vol. 20 at 3953, 3957).

## SUMMARY OF THE ARGUMENT

"To state a claim for relief in an action brought under § 1983, a Plaintiff must establish not only the deprivation of a right secured by the Constitution or laws of the United States, but also a deprivation committed under color of state law." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014) (emphasis added); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981). Accordingly, "[a] § 1983 action is unavailable 'for persons alleging deprivation of constitutional rights under color of tribal law.'" *Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006) (quoting *R.J. Williams Co. v. Ft. Belknap Hous. Auth., 719 F.2d 979, 982 (9th Cir. 1983))*. Notably, acting "'under color of state law' [is] a jurisdictional requisite for a § 1983 action[.]" *Polk County v. Dodson*, 454 U.S. 312, 315 (1981); *see also Sanchez v. Surratt*, 682 Fed. Appx. 679, 680-681 (10th Cir. 2017).

Within the Tenth Circuit, State and local law enforcement officers have **no** law enforcement authority over Indians in "Indian country." *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990).  State law enforcement officers do not have authority to arrest Indians in Indian country. *See McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020). 1151. While there is no question that tribal and federal officers may exercise law enforcement authority over Indians in Indian country, there is no authorization for state law enforcement officers to do the same. *See Neff*, 905

11

F.2d at 1353 ("states [lack] independent authority to enforce their own laws over Indians on Indian land."). State and local law enforcement officers in Oklahoma have law enforcement powers over Indians in Indian country **only if** they possess and act under the authority of law-enforcement commissions from the tribes or from the federal government. (App. Vol. 1 at 237-247).

Here, it is undisputed the encounter took place on tribal land, Bobby Barrick was a member of the Choctaw Nation, and Hannah was a duly appointed and sworn Tribal Police Officer of the Choctaw Nation of Oklahoma. Further, Hannah did not have state jurisdiction over Bobby Barrick on tribal land due to *McGirt* and subsequent case law. Thus, the only law enforcement authority under which Defendant Hannah could have acted is tribal authority.

Plaintiff's § 1983 individual capacity claims require proof that Defendant Hannah was acting under color of state law at the time of the challenged conduct. Notably, there was no state authority for Hannah to invoke. But for Hannah's tribal commissions, it would have been unlawful and unconstitutional for Hannah to act under color of state law vis-à-vis Bobby Barrick. *See Ross v. Neff,* 905 F.2d 1349, 1353 (10th Cir. 1990).

## **STANDARD OF REVIEW**

A district court's grant of summary judgment is reviewed *de novo*, with the appellate court "drawing all reasonable inferences and resolving all factual

disputed in favor of the non-moving party." *Yousuf v. Cohlmia,* 741 F.3d 31, 37 (10th Cir. 2014). Although the review of the record is *de novo*, that review is conducted "from the perspective of the district court at the time it made its ruling," and review is limited "to the materials adequately brought to the attention of the district court by the parties." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 (10th Cir. 2008). Summary judgment should be granted when there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Supreme Court has clarified "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986), Consequently, "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id*. A movant's summary judgment burden is, therefore, properly met by reference to the lack of evidence in support of a plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

13

## ARGUMENTS AND AUTHORITIES

### I. The district court properly granted summary judgment in favor of Defendant Hannah, as he was not acting under the color of state law.

The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). But in Indian Country, state law enforcement officers have no authority over Indians under state law. *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990). Only federal and tribal police possess law enforcement power over Indians in Indian Country. *Id.* at 1352. Thus, under the traditional test outlined in *West,* Hannah neither possessed power to seize Bobby Barrick by virtue of state law, nor was the seizure made possible only because Hannah was clothed with the authority of state law. On the contrary, Hannah's power to interact as a law enforcement officer with Bobby Barrick arose only from Hannah's Choctaw Tribal Commission. Thus, Hannah did not act under color of state law.

Plaintiff argues that because Hannah was wearing a state uniform and possessed other indicia of state authority, he was acting under color of state law. For reasons developed more fully below, the uniform and other indicia of state authority are immaterial in dual-commission cases. But even in the private versus

14

government action context, neither the Supreme Court nor the Tenth Circuit have ever held that such "indicia of state authority" without more equates to acting under color of state law. *Dry v. City of Durant*, 242 F.3d 388, *4 (10th Cir. 2000) (unpublished).

The issue of uniforms and other indicia of state authority is useful only in cases where the issue is whether the action taken was private or governmental. In those cases, the uniform is relevant to determine whether the state officer is *purporting* to act with state authority. For example, in *Griffin v. State of Md.*, the Court considered the fact that a private employee who was also a deputy sheriff was wearing a sheriff's deputy badge when he made an arrest for trespassing. 378 U.S. 130, 132 (1964). There, the Court held that "[i]f an individual is possessed of state authority and *purports to act under that authority*, his action is state action." *Id.* at 135 (emphasis added). (*Griffin* is further distinguishable because –unlike the case at bar—the deputy in *Griffin* possessed state-law arrest powers vis-à-vis the arrestees).

Here, however, the issue is not government versus private action. Rather, this is a dual-commission case. The uniform is immaterial in this case because it is well understood that state police possess law-enforcement power over Indians in Indian Country *only if* they possess tribal commissions. Thus, by wearing a state uniform, a cross-commissioned officer is in no way *purporting* to possess state power over

Indians. Perhaps if both sovereigns had identical power in Indian Country, the choice of uniform may bear some relevance in determining which of two sovereigns the officer is acting on behalf of. But that is not the case here. Here, only one sovereign had power over Bobby Barrick: the *tribal* sovereign. Thus, there is no reason to find that Hannah was acting under color of *state* law.

To find that Hannah was acting under color of state law with respect to an Indian in Indian Country would mean that Hannah was acting illegally. It is a violation of federal law for a state officer to exercise state law enforcement power over Indians in Indian Country. *Ross v. Neff*, 905 F.2d 1349, 1353–54 (10th Cir. 1990). Under these circumstances, it makes little sense to infer that Hannah was purporting to use state power when he held a perfectly valid tribal commission authorizing him to exercise tribal police power over Bobby Barrick. A finding that Hannah was acting "under color of state law" would mean that Hannah was violating the Fourth Amendment and subjecting himself to personal damages liability under § 1983 pursuant to the holding of *Ross*. There is nothing in the record so indicating.

Plaintiff has cited no authority in which a dual-commissioned officer who acted in a jurisdiction in which only one of the commissions was valid, was found to have acted pursuant to the jurisdictionally invalid commission. In other words, there is no authority in which an officer has been found to have illegally used his

16

Jurisdiction A commission in Jurisdiction B, where the officer possessed commissions for both Jurisdiction A and Jurisdiction B. Absent circumstances not present here, such a holding would be absurd.

## II. Specific responses to Plaintiff's arguments.

### a. The District Court did not "ignore pertinent facts" and the Court's conclusion that Defendants were not acting under color of state law was supported by undisputed <u>material</u> facts.

Plaintiff argues the District Court's finding that Defendants were not acting under color of state law "was not the product of an intensely 'fact-bound inquiry' [but rather] it relied on a single 'determinative factor,' completely ignoring dozens of highly pertinent facts." Additionally, Plaintiff asserts that the Court "considered only five (5) facts and inexplicitly ignored the other twenty-seven (27)". *Id.* at 39. She claims "the Court must accept" all of her additional facts as true. As the District Court rigorously addressed, Plaintiff is incorrect and did not apply the right standard in this case. (App. Vol. 20 at 3958). First, Plaintiff is not the moving party and was not asking for judgment. Second, Defendant, as the moving party, is not required by Fed. R. Civ. P. 56 or LCvR 56.1 to respond to these "additional facts." Finally, Defendant did object to Plaintiff's additional facts and specifically stated that by not individually responding to them, they were not conceding the veracity or relevance. (App. Vol. 20 at 3849).  Even if Defendant (the moving party) did not dispute Plaintiff's additional facts, and even if they possessed proper evidentiary

17

support, the additional facts do nothing to change the result.

Further, the Court is **not** required to accept all of Plaintiff's stated facts as true. The District Court pointed to the proper and applicable standard, "whether a genuine dispute exists about a *material* fact, not whether a dispute exists as to any fact alleged by the parties." (App. Vol. 20 at 3958). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). In any event, none of the additional "facts" alleged by Plaintiff precluded summary judgment for Defendant in this matter. Notably, the District Court emphasized that, "Plaintiff does not point to, nor is this Court aware of, any controlling law which states that a single fact cannot be outcome-determinative in deciding a motion for summary judgment." (App. Vol. 20 at 3958).

The Court accurately concluded that Plaintiff's highlighted facts related to how Defendants were dressed (i.e., insignia), what vehicles they drove, or how they were dispatched to the scene are relevant to establish that Defendants were acting in a law enforcement capacity, but they do not establish the particular authority under which Defendants were acting. (App. Vol. 20 at 3958). Plaintiff's "facts" were not ignored by the Court; In fact, the Court thoroughly reviewed and considered said facts in both the Report & Recommendation (App. Vol. 20 at 3881-3883) and Opinion & Order (App. Vol. 20 at 3953-3955). The District Court was

correct in finding that the **material** facts necessary to establish what particular authority (state or tribal) Defendant Hannah was acting under included, (1) Bobby Barrick's status as an Indian and member of the Choctaw Nation, (2) the location in Indian country, and the (3) cross-deputization of Hannah. (App. Vol. 20 at 3884-3892).

b. **The District Court properly found that "neither Kasbaum, Lee, [n]or Hannah were exercising power possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law."**

Plaintiff again argues that Defendants "could not be cross-deputized with a tribe if they were not already state law enforcement officers", and that "in order to exercise any tribal authority temporarily, Defendants had to simultaneously and consistently maintain their powers as state law enforcement officers – powers conferred onto them by state law." However, this argument is faulty for various reasons and has no applicable legal support.

Plaintiff's cited authorities in support of her above-stated argument do not even remotely address the issue before this court. Plaintiff cites 11 O.S. § 34-103(C) for support. 11 O.S. § 334-103(C) addresses intergovernmental agreements between municipalities and counties, which are fundamentally different than any agreement between a county and a tribe or a state law enforcement agency and a tribe. Finally, Plaintiff cites two (2) Attorney General ("AG") Opinions. The first AG Opinion is

19

not even related to tribal jurisdiction. *See* 2000 OK AG 58. The second AG Opinion addresses whether cross-deputization agreements violate Article II, Section 12, of the Oklahoma Constitution. 1990 OK AG 32. Again, this opinion does nothing to support Plaintiff's position. Additionally, it directly finds that state law enforcement officers, absent an appropriate cross-deputization agreement, can only investigate a federal or tribal crime inside Indian country as a private citizen and cannot operate as a law enforcement officer making arrests. *Id*. at ¶¶ 40-42.

Plaintiff's argument consists of unsupported conclusions, none of which meaningfully address or undermine the Court's well-reasoned analysis and opinion. The District Court properly concluded that, "[w]hile being a state law enforcement officer may be a prerequisite for cross-deputization, the authority to arrest Indians in Indian country is not derived from state law, but from Tribal law. Stated another way, in the absence of Tribal authority, state law enforcement officers do not have jurisdiction to arrest Indians in Indian country." (App. Vol. 20 at 3961)

c. **The District Court properly held that, as a matter of law, in the absence of tribal authority, state law enforcement officers do not have jurisdiction to arrest Indians in Indian country.**

Plaintiff argues the District Court erroneously relied upon the premise that state courts generally have no jurisdiction to try Indians for conduct committed in Indian Country. In support of this contention, Plaintiff cites to *Oklahoma v. Castro-*

*Huerta*, 597 U.S. 629 (2022) for the proposition that "a state has jurisdiction over all of its territory, including Indian country." *Id*. However, referring to cherry picked quotes from *Oklahoma v. Castro-Huerta,* 597 U.S. 629 (2022) and other cases citing to *Castro* does not achieve Plaintiff's goal. None of these authorities contradict the well-established premise that the State does not have criminal jurisdiction in Indian Country except in limited circumstances. *McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020); *Ross v. Neff,* 905 F.2d 1349, 1352 (10th Cir. 1990) (citing 18 U.S.C. § 1152) ("Indian country is subject to exclusive federal or tribal criminal jurisdiction."); *Nevada v. Hicks,* 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) ("although Indian reservations are located within the territory of the State, States presumptively lack both civil and criminal jurisdiction over tribal members for activities that occur within reservation boundaries."). Plaintiff offers no reason why this is one of those limited circumstances or how the Supreme Court's ruling in *Castro-Huerta[3]* gave the State jurisdiction over Indians (such as Bobby Barrick) in Indian Country.

The District Court properly held that, "*Castro-Huerta* did not overrule *McGirt*, but rather established concurrent state and federal jurisdiction for crimes committed by non-Indians against Indians in Indian country," and "[t]here is no

---

[3] The obvious key distinction being that Castro-Huerta was a Non-Indian. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022).

factual dispute as to Bobby Barrick's status as an Indian or that the events occurred in Indian country and, therefore, the Court finds that this argument is of no effect." (App. Vol. 20 at 3960).

Plaintiff alleges that the Court's holding that Defendants cannot "wear two hats" simultaneously, is both factually and legally erroneous. Dkt. No. 15 at 53-54. First, this is not what the Court held at all. The Court acknowledged that officers may wear two hats simultaneously but found "the question is one of primacy, not numerosity." (App. Vol. 20 at 3888). Further, "the overriding question is which official duties—those of Tribal or state law—took precedence." *Id.* at 3890. Furthermore, the only reason these Defendants even had any authority over Bobby Barrick was due to their tribal commissions.  It was their tribal authority, not their state authority, that allowed them to undertake law enforcement action during these interactions with Bobby Barrick. As a matter of clearly established law, it would have been illegal for Defendant Officers to "wear a state hat" as they arrested Bobby Barrick (Indian) in Indian country. *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990). The District Court properly concluded that, "regardless of whether Defendants maintained state law authority, Defendants, in arresting an Indian in Indian country, were operating under Tribal law," and "the Court concurs that Tribal law took precedence." (App. Vol. 20 3961-3962).

**III.    As a matter of tribal sovereignty, the Bill of Rights is not the source of civil rights for tribal members and does not apply to tribes or to tribal actors.**

Another problem with Plaintiff's case is that the Fourth Amendment does not apply to tribal officers interacting with tribal members on tribal land. Neither the Fourteenth Amendment nor any other provision of the Bill of Rights applies to Indian tribes. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) ("As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."); *Native Am. Church of N. Am. v. Navajo Tribal Council*, 272 F.2d 131, 134 (10th Cir. 1959) (First Amendment applies only to federal government and to states via the Fourteenth Amendment—not to tribes); *Martinez v. S. Ute Tribe of S. Ute Rsrv.*, 249 F.2d 915, 919 (10th Cir. 1957) (Due Process Clause does not apply to tribes). Thus, as an Indian in Indian Country, the Fourth Amendment simply does not govern tribes or those who—like Hannah—act solely under tribal authority. Rather, Bobby Barrick was protected from tribal action by the Indian Civil Rights Act, 25 U.S.C.A. §§ 1301-05 and by the laws of the Choctaw Nation of Oklahoma.

**IV.    Tribes control the issuance of tribal police commissions.**

Finally, it must be remembered that the Tribes are free to condition the issuance of their police commissions upon agreements to act in accordance with tribal guidelines, rules, and procedures. There is no limit to the grounds upon which

23

a tribe may condition the issuance of its police commissions. In their wisdom, the Choctaw Nation saw fit to issue a Choctaw Police Commission to Hannah so he would have authority to act as a tribal police officer when inside its reservation and lands. When Hannah is acting pursuant to the commission, he is acting under the authority of the tribe just as much as a tribal officer employed by the tribe. Just as a tribal officer employed by the tribe is not amenable to suit under § 1983, neither is Hannah.

**V.     The existence *vel non* of other remedies available to tribal citizens outside of § 1983 is immaterial to the statutory-interpretation issue presented here.**

While it is tempting to speculate about the existence of current or future legal remedies available outside of § 1983—such as potential remedies under the Claims and Immunities Act of the Choctaw Nation, or remedies under § 1983 if it were amended by Congress to include rights violations under color of *tribal* law—such considerations are ultimately immaterial to the issue presented here. There is no question that the text of § 1983, as it stands now, does *not* provide a legal remedy for violations carried out under color of tribal law. And even if there are no other current remedies for tribal citizens against those acting under color of tribal authority, that fact is irrelevant to whether the current version of § 1983 provides such a remedy. At the conclusion of the *McGirt* decision, the Court reminds us to avoid handwringing about the supposed adverse outcomes of applying the law in a

24

straightforward manner:

> In reaching our conclusion about what the law demands of us today, we do not pretend to foretell the future and we proceed well aware of the potential for cost and conflict around jurisdictional boundaries, especially ones that have gone unappreciated for so long. But it is unclear why pessimism should rule the day. With the passage of time, Oklahoma and its Tribes have proven they can work successfully *937 together as partners. Already, the State has negotiated hundreds of intergovernmental agreements with tribes, including many with the Creek. See Okla. Stat., Tit. 74, § 1221 (2019 Cum. Supp.); Oklahoma Secretary of State, Tribal Compacts and Agreements, www.sos.ok.gov/tribal.aspx. These agreements relate to taxation, law enforcement, vehicle registration, hunting and fishing, and countless other fine regulatory questions. See Brief for Tom Cole et al. as Amici Curiae 13–19. No one before us claims that the spirit of good faith, "comity and cooperative sovereignty" behind these agreements, id., at 20, will be imperiled by an adverse decision for the State today any more than it might be by a favorable one.16 And, of course, should agreement prove elusive, Congress remains free to supplement its statutory directions about the lands in question at any **2482 time. It has no shortage of tools at its disposal.

*McGirt v. Oklahoma*, 591 U.S. 894, 936–37 (2020).

And finally, the fact that Congress has not yet provided a remedy for civil rights violations by those acting under color of tribal law does not mean that the Court must try to find a way to shoehorn such a remedy into § 1983. There are too many cases to count where a particular plaintiff is left without a damages remedy for a civil rights violation based on Congressional policy decisions. *See, e.g., Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024) (Court rejected civil rights action against officer of U.S. Marshal's Service because there was no statutory authority for such an action and Congress was "better positioned .

. . to authorize [such] an action") (cleaned up). The case at bar must be treated no differently.

## CONCLUSION

The District Court did not err in finding that Defendant Mark Hannah was acting under the color of tribal law, not under color of state law, when he arrested and attempted to seize Bobby Barrick (an Indian), on Indian land, pursuant to the powers granted to him by his commissioned status with the Choctaw Nation.

WHEREFORE, Defendant Mark Hannah requests that this Court affirm the District Court's Judgment for him in all respects.

/s/ Devan Pederson
**DEVAN PEDERSON, OBA#16576**
**JESSE S. OGLE , OBA#34275**
ASSISTANT ATTORNEYS GENERAL
OKLAHOMA ATTORNEY GENERAL'S OFFICE
Litigation Division
313 NE 21st St.
Oklahoma City, OK 73105
T: (405)-521-3921 F: (405)-521-4518
devan.pederson@oag.ok.gov
jesse.ogle@oag.ok.gov
Attorneys for Mark Hanna

26

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding parts of the document exempt by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this document contains 7,252 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to 10th Cir. R. 25.3 and the Tenth Circuit Court of Appeals' CM/ECF User's Manual 10th Ed., updated March 23, 2026, I hereby certify that:

    a.    all required privacy redactions have been made pursuant to Fed. R. App. P. 24(a)(5) and 10th Cir. R. 25.5;

    b.    any hard copies of Appellees' Response Brief sent pursuant to this Court's request and order are and will be exact copies of the ECF filing;

    c.    the ECF submission was scanned for viruses with the most recent version of a CrowdStrike Falcon Censor, last updated March 16, 2026, and, according to the program is free of viruses; and

    d.    the Appellees' Response Brief complies with applicable type volume limits as stated in the above Certificate of Compliance.

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I electronically transmitted the foregoing corrected document to the Clerk of Court using the ECF System for filing.

/s/*Devan Pederson*
Devan Pederson

27