# PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P.

GERALD P. GREEN
RUSSELL L. HENDRICKSON
ROBERT S. LAFFERRANDRE
TODD A. ESTES
DANIEL J. HOEHNER
JERROD S. GEIGER
MARK E. HARDIN
AMY BRADLEY-WATERS@
RANDALL J. WOOD
BRYAN E. STANTON
KIMBERLY A. STEVENS
MATTHEW J.G. MCDEVITT#
JAKE G. PIPINICH
JESSICA L. DARK
HAILEY M. HOPPER
JOHN C. LENNON*
CARSON C. SMITH
JEFFREY C. HENDRICKSON
KATIE F. LEE

AMANDA K. NAIFEH
ANGELA O. REINSTEIN
CLARK P. BUSHYHEAD
JOHN H. KIM

OF COUNSEL:
ROBERT L. BETTS
MIKE D. GRAY
C.SCOTT JONES
NEVIN R. KIRKLAND
JASON E. MARSHALL
JENNIFER F. SHERRILL
PETER L. WHEELER

ESTABLISHED 1923
CLAYTON B. PIERCE MEMORIAL BUILDING
1109 N. FRANCIS AVE.
OKLAHOMA CITY, OKLAHOMA 73106-6813
[MAIL: P.O. BOX 26350 OKLA. CITY, OK 73126-0350]
www.piercecouch.com
TEL: (405) 235-1611
FAX: (405) 235-2904

JOHN W. AUSTIN
TIFFANY D. BARKER
JESSICA JAMES CURTIS
DEBRA L. DAVIS
KARA N. ELLISON
MAKAYLA R. GUNTER
DAYLAN W. HAWKINS
LAURA K. HOEHNER
BENJAMIN K. HONEYCUTT^
SHEILA G. JESSEE
SAMANTHA R. LARA
W. RILEY NESTER

CLAYTON B. PIERCE (1889-1981)
JOHN R. COUCH (1915-1993)
CALVIN W. HENDRICKSON (1921-2001)
JAMES B. DURANT (1935-2004)
HUGH A. BAYSINGER (1938-2012)
JOHN ROGER HURT (1958-2023)
------------------------------------
@ Also Admitted in Missouri
* Also Admitted in New York
# Also Admitted in Texas
^Also Admitted in Washington

TULSA
P.O. BOX 239
TULSA, OKLAHOMA 74101
TEL: (918) 583-8100
FAX: (918) 583-8107

April 29, 2026

**FILED VIA CM/ECF**

Christopher M. Wolpert
Clerk of the Court
United States Court of Appeals for the Tenth Circuit
Byron White Court House
1823 Stout Street
Denver, Colorado 80257

> Re:    *Barrick v. Matthew Kasbaum, Quentin Lee and Mark Hannah*
>        CA10 Appeal No. 25-7082
>        Fed. R. App. P. 28(j) Letter

---

Dear Mr. Wolpert,

Pursuant to Fed. R. App. P. 28(j), Appellees Matthew Kasbaum and Quentin Lee notify the Court of new authority relevant to the above-styled case: *Martinez v. City of Aurora, Colorado*, No. 25-1142, --- F.4th ---, 2026 WL 1130240 (10th Cir. 2026). *Martinez* rejects the idea that apparent authority alone can establish that one is acting under color of state law.  Adopting *Lindke v. Freede*, 601 U.S. 187 (2024), this Court held that "[s]tate action for purposes of § 1983 exists only if an individual '(1) possessed actual authority' to take a particular action **on the state's behalf** and '(2) purported to exercise that authority[.]'" *Martinez*, 2026 WL 1130240 at \*5 (*quoting Lindke*, 601 U.S. at 198) (emphasis added).

In holding that actual authority is required to establish state action, the Court acknowledged that its prior cases suggesting apparent authority is sufficient, such as *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) and *Dry v. City of Durant*, 242 F.3d 388 (10th Cir. 2000), are no longer correct in light of *Lindke*. *Id.* at \*7. The Estate heavily relied upon *Jojola* and *Dry* to argue that actual or apparent authority is sufficient. (Dkt. 66, pp. 8-9; 13-14).  With those precedents abrogated, the Estate's argument that this Court should disregard the source of the Deputies' actual authority is unsupported.

*Martinez* also confirms the Deputies' position. In Section II of their Response brief, the Deputies outlined *Lindke*'s two-part test and showed that the first prong cannot be satisfied because the Deputies' actual authority was derived from the Choctaw Nation, not the State. (Dkt. 49, pp. 43-58). Like the officer in *Martinez*, the Deputies lacked actual state authority to engage in the specific conduct complained of—arresting Barrick, an Indian, in Indian Country. That authority was granted to them solely by the Choctaw Nation. Apparent authority alone is insufficient to establish the state action requirement. *Martinez,* 2026 WL 1130240 at \*9. *Martinez* further supports the Deputies' proposition that the source of their actual authority is dispositive in this case. A copy of the *Martinez* opinion is attached as Exhibit 1.


Sincerely,

PIERCE COUCH HENDRICKSON
　BAYSINGER & GREEN, L.L.P.

Robert S. Lafferrandre
Randall J. Wood
Sheila G. Jessee
Jessica James Curtis

FILED
United States Court of Appeals
Tenth Circuit

April 27, 2026

Christopher M. Wolpert
Clerk of Court

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

WYOMA MARTINEZ,

     Plaintiff - Appellee,

v.

CITY OF AURORA, COLORADO, a
municipality,

     Defendant - Appellant,

and

DOUGLAS HARROUN, individually,

     Defendant.

No. 25-1142

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:23-CV-01241-CNS-SBP)**

_____

Hollie R. Birkholz (Julia A. Bannon, with her on the briefs), Office of the
Aurora City Attorney, Aurora, Colorado, for Defendant-Appellant.

Zachary D. Warren, Highlands Law Firm, Denver, Colorado, for Plaintiff-
Appellee.

_____

Before **McHUGH**, **CARSON**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

EXHIBIT 1

_____

Plaintiff-Appellee Wyoma Martinez was attacked by Defendant Douglas Harroun (Officer Harroun), a City of Aurora police officer. When the attack occurred, Officer Harroun was on administrative leave. Ms. Martinez filed a civil rights lawsuit in federal district court under 42 U.S.C. § 1983 against Officer Harroun and his employer Defendant-Appellant City of Aurora, Colorado (Aurora). Aurora moved to dismiss, arguing the complaint failed to plausibly allege § 1983's state-action requirement. The district court denied Aurora's motion to dismiss and its motion to reconsider the denial. We then granted Aurora's petition to hear this interlocutory appeal. Exercising jurisdiction under 28 U.S.C. § 1292(b), we reverse the denial of the motion to reconsider and remand for further proceedings consistent with this opinion.

# I

## A[1]

On December 31, 2022, Douglas Harroun, an officer with the Aurora Police Department, shot and severely injured an individual while on duty.

---

[1] The facts in this opinion come from Ms. Martinez's operative Second Amended Complaint (the complaint). "At the motion-to-dismiss stage, [w]e must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Cressman*

EXHIBIT 1

The next day, Aurora's chief of police placed Officer Harroun on administrative leave (Leave Order).[2] The Leave Order stated, in relevant part, "You are being placed on administrative leave. You will not take any action as a sworn police officer, nor are you allowed to work any secondary employment or wear your police uniform."[3] RI.125. Officer Harroun signed the Leave Order.

A little over a week later, Officer Harroun was involved in another violent incident. On the evening of January 11, 2023, Officer Harroun and

---

v. *Thompson*, 719 F.3d 1139, 1141 (10th Cir. 2013) (alteration in original) (internal quotation marks omitted).

[2] The Leave Order appeared in litigation for the first time as an exhibit to Aurora's motion to dismiss the first amended complaint (which is non-operative in light of the Second Amended Complaint). Typically, "in assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the allegations within the four corners of the complaint, and cannot consider other pleadings or external allegations." *Brown* v. *City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (internal quotation marks omitted); *see also Gee* v. *Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (recognizing exceptions not at issue here). Although Ms. Martinez did not expressly reference the Leave Order in her operative complaint, she consented to its use at the motion-to-dismiss stage. *See* RI.154 n.2. No party challenged the authenticity of the Leave Order or the district court's authority to consider it. Nor does any party argue that we cannot rely on the Leave Order on appeal. Accordingly, like the district court, we consider the Leave Order in resolving this case.

[3] The Leave Order states, in full:

> You are being placed on administrative leave. You will not take any action as a sworn police officer, nor are you allowed to work any secondary employment or wear your police uniform.

EXHIBIT 1

his wife drove into the parking lot of his apartment complex and saw Ms. Martinez, a resident of the same complex, walking her dog. Officer Harroun drove near Ms. Martinez and became upset when she failed to move out of his way. Officer Harroun "quickly accelerated towards" Ms. Martinez and nearly struck her before "slamming on his brakes right next to her, . . . effectively trapping her between his vehicle and [a] row of parking garages[.]" RI.188 (¶ 28). He then got out of his car and began to berate Ms. Martinez. Ms. Martinez threatened to call police. Officer Harroun replied, "Go ahead, I'm a cop." RI.188 (¶ 30). It is undisputed Officer Harroun was not wearing his police uniform. He then provided his badge number.

---

You are obligated to honor any subpoenas that you currently have or may receive. Court appearances pursuant to subpoena will be paid in accordance with the current collective bargaining agreement with the City of Aurora. Should you appear in court, you will dress in appropriate business attire as defined in Directive 8.1.4 (Appearance).

While on administrative leave, you are obligated to remain available for contact during regular business hours (Monday through Friday, 0800-1700 hours) and to provide valid contact information below.

With the exception of those communications by law (attorney, spouse, clergy, doctor and psychotherapist), you are directed not to discuss the details of the critical incident with anyone outside of the investigating unit(s) assigned to your case.

RI.125.

4

<span style="color:red">EXHIBIT 1</span>

After Ms. Martinez warned Officer Harroun she had pepper spray, he grabbed her wrist, slammed her to the ground, and "punch[ed] her approximately four or five times in the face and throat while pinning her to the ground[.]" RI.190 (¶¶ 45–46). Officer Harroun then reidentified himself as a police officer, produced his badge, told Ms. Martinez "numerous times" she was under arrest for "assaulting a peace officer," and said she would be going to jail. RI.190–91 (¶ 47). Officer Harroun explained to Ms. Martinez and eyewitnesses that he was "just trying to disarm her and detain her[.]" RI.191 (¶ 52).

Later that evening, Officer Harroun was arrested for unjustified use of force and charged with first-degree assault by strangulation, Colo. Rev. Stats. § 18-3-202(1)(g); attempting to influence a public servant, *id.* § 18-8-306; and third-degree assault, *id.* § 18-3-204(1)(a). Because of the attack, Ms. Martinez suffered a traumatic brain injury, vision loss, and significant mental and emotional distress, among other issues.

## B

Ms. Martinez sued Aurora and Officer Harroun under 42 U.S.C. § 1983, alleging violations of her rights under the Fourth and Fourteenth Amendments and the Colorado Constitution. The complaint pleaded one claim against Aurora for "failure to hire, investigate, train, supervise, and discipline." RI.229 (bolding and capitalization altered). The complaint also

5

EXHIBIT 1

pleaded four claims against Officer Harroun: excessive force in violation of the Fourth Amendment, false arrest in violation of the Fourth Amendment, excessive force in violation of the Colorado Constitution, and denial of equal protection in violation of the Colorado Constitution. The complaint alleged that, during the incident on January 11, 2023, Officer Harroun acted pursuant to Aurora's policy for off-duty officers—namely, Aurora Directive 14.4 (Off-Duty Policy). According to the complaint, the Off-Duty Policy states that "[s]worn members confronted with an off-duty situation must use discretion and good judgment in deciding if direct participation is necessary as opposed to summoning an on-duty police officer." RI.182.

Aurora moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Aurora argued the complaint did not plausibly allege Officer Harroun was acting under color of state law—an element of a § 1983 claim. According to Aurora, the Leave Order had revoked Officer Harroun's actual authority to act as a sworn Aurora police officer.[4] That is, "when an officer has no [actual] authority to act for the police department," Aurora contended, then that officer has not acted under color of law. RI.247.

---

[4] On this point, Aurora appeared to distinguish between *actual* authority and *apparent* authority. As we will discuss, there are important differences between actual and apparent authority that are relevant to the issues before us.

EXHIBIT 1

Ms. Martinez insisted her allegations satisfied the under-color-of-law requirement. "[T]he standard for whether an officer acts under color of law," she said, "is **not** whether the officer has **actual** authority from his employer to take action." RI.282 (citing *Jojola* v. *Chavez*, 55 F.3d 488, 493 (10th Cir. 1995)). In her view, "either actual or apparent" authority could establish the under-color-of-law element. RI.282 (quoting *Jojola*, 55 F.3d at 493). Because Officer Harroun at least had *apparent* authority to act as an Aurora police officer during the incident, Ms. Martinez argued, Officer Harroun necessarily acted under color of law.

While the motion to dismiss was pending for decision, Aurora submitted a notice of supplemental authority about *Lindke* v. *Freed*, 601 U.S. 187 (2024). There, the Supreme Court clarified the under-color-of-law element requires a § 1983 plaintiff to show the official "had *actual authority* to speak on behalf of the State on a particular matter[.]" *Lindke*, 601 U.S. at 204 (emphasis added). "If the plaintiff cannot make this threshold showing of [actual] authority," the Court explained, "he cannot establish state action." *Lindke*, 601 U.S. at 201. Relying on *Lindke*, Aurora urged the district court to reject Ms. Martinez's arguments that apparent authority alone could satisfy the under-color-of-law element. Because Aurora "took every necessary step to strip [Officer] Harroun of his authority to act under color of law before the incident," the City reasoned, it "cannot fairly be

7
EXHIBIT 1

blamed for his conduct even if he believed he was acting as a police officer" and regardless of "how he presented himself." RII.313.

The district court denied Aurora's motion to dismiss (MTD Order). The district court did not cite *Lindke*. Instead, it relied on *Dry* v. *City of Durant*, 242 F.3d 388 (10th Cir. 2000) (unpublished), which it read to supply four "factors" for determining whether an off-duty officer acts under color of law: (1) "actual authority," (2) "objective indicia of authority," (3) "the victim's perception of the encounter," and (4) "the defendant's belief as to whether he was acting under color of law." RII.323 (quoting *Dry*, 242 F.3d 388, at \*4). Applying *Dry* to the allegations in Ms. Martinez's complaint, the district court determined Officer Harroun "had no actual authority to act as a police officer" on the night of the attack. RII.329. The district court explained

> The first factor of the *Dry* analysis, actual authority, favors the City. The City argues that Defendant Harroun was not acting under color of law when he attacked Ms. Martinez because he was an administratively suspended officer, not merely an off-duty officer, and so he did not have any actual authority to act. The Court agrees. He was explicitly advised, in the administrative leave memorandum that he signed, "You will not take any action as a sworn police officer."

RII.324 (internal citations omitted). Still, in the district court's view, Ms. Martinez had plausibly pleaded Officer Harroun acted with *apparent* authority. The district court concluded "acting with apparent authority can

8

EXHIBIT 1

be sufficient" to establish state action under § 1983. RII.324. On that basis, the district court determined, "Plaintiff has sufficiently alleged that Defendant Harroun was acting under color of law to survive the motion to dismiss." RII.329.

Aurora moved for reconsideration. It again pointed to *Lindke*, which clarified only actual authority—not apparent authority—could satisfy the state-action requirement. Aurora insisted, in light of *Lindke*, the district court had erroneously concluded Officer Harroun could act "under color of law" despite lacking actual authority.

The district court denied the reconsideration motion and refused to dismiss the complaint. But the Reconsideration Order departed from the MTD Order in two significant ways. First, the district court now relied on and applied *Lindke*. Second, although Ms. Martinez's complaint was unchanged, the district court newly concluded Ms. Martinez *did* plausibly plead Officer Harroun had "actual authority" to "use force when performing police duties" at the time of the incident. RII.398.

In support of its conclusion, the district court pointed to allegations that Aurora had a custom of allowing officers on administrative leave to retain their badges. A police badge "is itself a form of delegated authority," the court said, "because it symbolizes the authority that a person has to act as a police officer." RII.398. The district court also found Ms. Martinez had

9

EXHIBIT 1

pleaded that Aurora maintained the Off-Duty Policy, which "plausibly grants some actual authority for officers on leave to still act as officers." RII.398. Because Ms. Martinez had plausibly pleaded Officer Harroun "subjectively believed that he was acting pursuant to the off-duty directive," the district court explained, his subjective belief "is plausible evidence of the scope of the grant of actual authority." RII.398. Thus, the court said, "*Lindke* does not change the Court's conclusion that Defendant Harroun was plausibly acting under color of law[.]" RII.399.

This timely appeal followed.[5]

## II

There is one dispositive issue in this interlocutory appeal: Did Ms. Martinez plausibly allege Officer Harroun acted "under color of law" when he assaulted her on January 11, 2023? For the reasons that follow, we must answer *no*. We first set out our standard of review and describe the principles relevant to the disposition of this appeal, clarifying what *Lindke* requires of plaintiffs suing under § 1983. With these principles in mind, we then analyze the pleadings and address the parties' arguments, explaining

---

[5] Aurora moved to certify the Reconsideration Order for interlocutory appeal, which the district court granted. Aurora then filed an unopposed petition for permission to appeal pursuant to 28 U.S.C. § 1292(b), which we granted.

10
EXHIBIT 1

why Ms. Martinez has failed to plausibly allege the state-action requirement.

## III

### A

Two standards of review apply to this appeal. Recall, in the MTD Order, the district court denied Aurora's motion to dismiss under Rule 12(b)(6). And in the Reconsideration Order, the district court concluded that denial was proper. Aurora moved to certify the Reconsideration Order for interlocutory appeal.

"[W]e review the district court's denial of a motion for reconsideration for abuse of discretion." *United States* v. *Warren*, 22 F.4th 917, 927 (10th Cir. 2022) (internal quotation marks omitted). "A district court by definition abuses its discretion when it makes an error of law[.]" *Floyd* v. *Ortiz*, 300 F.3d 1223, 1227 (10th Cir. 2002) (internal quotation marks omitted). "A complaint's legal sufficiency is a question of law[.]" *Stark* v. *Reliance Standard Life Ins. Co.*, 142 F.4th 1252, 1256 (10th Cir. 2025). Accordingly, a district court abuses its discretion when its denial of reconsideration depends on an incorrect conclusion about the legal sufficiency of a complaint. *See Obeslo* v. *Empower Cap. Mgmt., LLC*, 85 F.4th 991, 1004–05 (10th Cir. 2023) ("[W]hen the district court's exercise of [ ] discretion *depended* on the resolution of a purely legal issue, we review that issue de

EXHIBIT 1

novo." (alteration in original) (internal quotation marks omitted)). To determine whether the district court abused its discretion in denying reconsideration based on the complaint's legal sufficiency, then, we must review *de novo* whether the pleadings sufficiently state a claim for relief. *See Alvarado* v. *KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("We review *de novo* a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a claim.").

A complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the complaint contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Chilcoat* v. *San Juan County*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). We assess plausibility by reading plaintiff's allegations "in the context of the entire complaint." *Id.* (internal quotation marks omitted).

## B

Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,]" deprives someone of a federal constitutional or statutory right. 42 U.S.C. § 1983. "The two elements of a Section 1983 claim are (1) deprivation of a federally protected right by (2) an actor acting under color of state law."

12

EXHIBIT 1

*Schaffer* v. *Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). This appeal concerns the under-color-of-law element, also known as the "state action" requirement. *See Lindke*, 601 U.S. at 195 n.1 ("Because local governments are subdivisions of the State, actions taken under color of a local government's law, custom, or usage count as 'state' action for purposes of § 1983.").

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West* v. *Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States* v. *Classic*, 313 U.S. 299, 326 (1941)). The state-action requirement thus precludes § 1983 liability for "merely private conduct, no matter how discriminatory or wrongful[.]" *Am. Mfrs. Mut. Ins. Co.* v. *Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1002 (1982)). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Brokers' Choice of Am., Inc.* v. *NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014) (quoting *Blum*, 457 U.S. at 1004). State action does not exist when state officials act "in the ambit of their personal pursuits[.]" *Hall*

13

EXHIBIT 1

v. *Witteman*, 584 F.3d 859, 866 (10th Cir. 2009) (quoting *Screws* v. *United States*, 325 U.S. 91, 111 (1945) (plurality opinion)).

The Supreme Court recently addressed the state-action requirement in *Lindke* v. *Freed*. There, the Court considered whether a city official's activity on social media occurred "under color of law" to support a First Amendment claim under § 1983. *See Lindke*, 601 U.S. at 190–91. The official, James Freed, was the city manager of Port Huron, Michigan. For years, Mr. Freed maintained a public Facebook page where he posted prolifically about both his personal life and his job. His profile picture showed himself in a suit with a city lapel pin. Mr. Freed frequently engaged with readers, answering inquiries from residents and replying to comments. During the COVID-19 pandemic, Port Huron resident Kevin Lindke was unhappy with the city's approach to the pandemic and voiced his displeasure on Mr. Freed's Facebook page. Mr. Freed deleted the comments and eventually blocked Mr. Lindke from commenting. Mr. Lindke sued under § 1983, alleging Mr. Freed had violated his First Amendment rights. The district court granted summary judgment to Mr. Freed, concluding he had not acted in a public capacity in managing his Facebook page. The Sixth Circuit affirmed, concluding there was no state action.

The Supreme Court reversed. The question before the Court was "whether a state official engaged in state action or functioned as a private

<div align="center">14</div>
<div align="center" style="color:red">EXHIBIT 1</div>

citizen." *Id.* at 196 (emphasis omitted). As the Court acknowledged, this "question is difficult, especially in a case involving a state or local official who routinely interacts with the public[,]" because "[s]uch officials may look like they are always on the clock, making it tempting to characterize every encounter as part of the job." *Id.* The Court began with the plain language of the statute. "As its text makes clear," § 1983 "protects against acts attributable to a State, not those of a private person." *Id.* at 194. "In the run-of-the-mill case," the Court explained, "state action is easy to spot." *Id.* at 195. But "[s]ometimes . . . the line between private conduct and state action is difficult to draw." *Id.* After all, the Court said, state officials "have private lives and their own constitutional rights." *Id.* at 197. To balance these interests, the Court announced a two-part test: State action for purposes of § 1983 exists only if an individual "(1) possessed actual authority" to take a particular action on the state's behalf and "(2) purported to exercise that authority[.]" *Id.* at 198.

This appeal concerns the "first prong of this test": actual authority. *Id.* Determining whether an individual possessed actual authority to take a particular action "demands a fact-intensive inquiry." *Id.* at 197. A court must first assess the "*specific conduct* of which the plaintiff complains."[6] *Id.*

---

[6] As the Sixth Circuit helpfully explained on remand, "to be state action," the conduct "must relate to a *specific matter* within [the officer's]

EXHIBIT 1

at 199 (emphasis added) (quoting *Blum*, 457 U.S. at 1004). And then a court must determine "the scope of an official's power[.]" *Id.* at 200. The Supreme Court has instructed that the scope of such power will depend on its source—that is, a "statute, ordinance, regulation, custom, or usage[,]" as listed in the text of § 1983. *See id.* at 200 (quoting 42 U.S.C. § 1983). "To be clear," the Court cautioned, "the '[m]*isuse* of power, possessed by virtue of state law,' constitutes state action." *Id.* at 199 (alteration in original) (quoting *Classic*, 313 U.S. at 326). "To misuse power, however, one must possess it in the first place." *Id.* at 200. Put differently, state action will not exist if the conduct at issue falls outside the scope of the officer's actual authority. *See id.* at 198–99 (explaining state action does not exist if "the challenged conduct 'entail[s] functions and obligations in no way dependent on state authority'" (alteration in original) (quoting *Polk County* v. *Dodson*, 454 U.S. 312, 318–19 (1981))).

The upshot is, after *Lindke*, apparent authority does not suffice to show state action. State action for purposes of § 1983 exists only if an individual acted with "actual authority" to engage in the "specific conduct" of which the plaintiff complains. *Id.* at 198–99 (internal quotation marks omitted); *see also Haulmark* v. *City of Wichita*, No. 22-3243, 2024 WL

---

portfolio of responsibilities." *Lindke* v. *Freed*, 114 F.4th 812, 816 (6th Cir. 2024) (emphasis added).

EXHIBIT 1

3219677, at *8 (10th Cir. June 28, 2024) (unpublished) (remanding for the district court to apply *Lindke*'s two-prong test). To the extent this circuit's cases have sometimes suggested otherwise, those statements of law are no longer correct after *Lindke. See, e.g., David* v. *City & County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) ("The defendant's authority may be actual or apparent."); *Jojola*, 55 F.3d at 493 ("The authority with which the defendant is allegedly clothed may be either actual or apparent." (internal quotation marks omitted)); *Dry*, 242 F.3d 388, at *4–5 (finding "the officers did not act pursuant to actual state authority," yet proceeding to analyze "under color of state law" via four "factors"); *Rogers* v. *Brown*, No. 24-8075, 2025 WL 1157195, at *2 (10th Cir. Apr. 21, 2025) (unpublished) ("The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." (quoting *Jojola*, 55 F.3d at 493)). The Sixth Circuit on remand similarly acknowledged *Lindke*'s effect on its own precedent. *See Lindke* v. *Freed*, 114 F.4th 812, 816 (6th Cir. 2024) ("[W]e previously held that actual *or* apparent authority could support a finding of state action. But the Supreme Court made clear that only actual authority could suffice." (citation omitted)).

17
EXHIBIT 1

To better understand *Lindke*'s test, common-law agency principles are instructive.[7] We have endorsed the Restatement's approach to an agent's authority. *See* Restatement (Third) of Agency §§ 2.01–.03 (2006). "Actual authority requires the agent's 'reasonabl[e] belie[f], in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act.'" *Coreslab Structures (TULSA), Inc.* v. *NLRB*, 100 F.4th 1123, 1136 (10th Cir. 2024) (alterations in original) (emphasis omitted) (quoting Restatement (Third) of Agency § 2.01). "Lack of actual authority is established by showing either that the agent did not believe, or could not reasonably have believed, that the principal's grant of actual authority encompassed the act in question." *1-800 Contacts, Inc.* v. *Lens.com, Inc.*, 722

---

[7] *Lindke* did not define "actual authority" but observed the inquiry into actual authority will be "fact-intensive[.]" *Lindke*, 601 U.S. at 197. Under the circumstances of this case, agency principles help inform our understanding of Officer Harroun's alleged scope of authority. We have drawn on agency law in a variety of legal contexts to elucidate the agency relationship. *See, e.g.*, *Beardsley* v. *Farmland Co-Op, Inc.*, 530 F.3d 1309, 1314–19 (10th Cir. 2008) (discussing liability for negligence); *Alfaro-Huitron* v. *Cervantes Agribusiness*, 982 F.3d 1242, 1250–56 (10th Cir. 2020) (discussing liability for breach of contract); *1-800 Contacts, Inc.*, v. *Lens.com, Inc.*, 722 F.3d 1229, 1250–51 (10th Cir. 2013) (discussing trademark liability); *Coreslab Structures (TULSA), Inc.* v. *NLRB*, 100 F.4th 1123, 1133, 1136–37 (10th Cir. 2024) (discussing liability under the National Labor Relations Act). Here, the parties have treated the "principal" as Aurora, the "agent" as Officer Harroun, and the "third party" as Ms. Martinez.

EXHIBIT 1

F.3d 1229, 1251 (10th Cir. 2013) (emphasis removed) (quoting Restatement (Third) of Agency § 2.02 cmt. e).

"[A]n agent's actual authority to do something is terminated when the principal revokes it." *Fucci* v. *First Am. Title Ins. Co.*, 153 F.4th 1129, 1145 (10th Cir. 2025). And a revocation becomes "effective when the other party has notice of it." *Id.* (quoting Restatement (Third) of Agency § 3.10(1)). What remains of the agent's authority post-revocation depends on how "the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." Restatement (Third) of Agency § 2.02(1); *see also id.* § 1.03 (stating a manifestation can be "written or spoken words or other conduct"). "[I]n no event must [the agent] act contrary to what he reasonably believes the principal desires him to do." *Fucci*, 153 F.4th at 1145 (alteration in original) (quoting Restatement (Second) of Agency § 33 cmt. a (1958)).

## IV

We now consider whether Ms. Martinez has plausibly alleged state action under § 1983. Aurora contends the complaint does not plausibly allege that, when he attacked Ms. Martinez, Officer Harroun had actual authority to use force or conduct arrests because he was on administrative leave. We agree.

19
EXHIBIT 1

## A

Following the approach in *Lindke*, we start by determining the "specific conduct" of which Ms. Martinez complains. *Lindke*, 601 U.S. at 199 (quoting *Blum*, 457 U.S. at 1004). At the motion-to-dismiss stage, the "specific conduct" at issue turns on the well-pleaded allegations in the complaint. *See Waller* v. *City & County of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) (explaining, at the motion-to-dismiss stage, a court considers only allegations within "the four corners of the complaint"); *Children's Health Def.* v. *Meta Platforms, Inc.*, 112 F.4th 742, 754–55 (9th Cir. 2024) (considering, in a post-*Lindke* case at the motion-to-dismiss stage, only the complaint's allegations to determine the "specific conduct"). Here, the parties do not dispute the specific conduct at issue. Officer Harroun

- identified himself as a police officer to Ms. Martinez;
- provided his badge number and displayed his badge; and
- used force to try to disarm, detain, and arrest her.

*See* RI.188, 190–91 (¶¶ 31–33, 46–47). Ms. Martinez has consistently claimed this specific conduct amounted to "the most quintessential of law enforcement activities[.]" Resp. Br. at 7; *see* Resp. Br. at 17, 22–23 (similar). In her operative complaint, she describes Officer Harroun's conduct during the incident as "official police action," RI.194 (¶ 72), performed "pursuant

EXHIBIT 1

to his authority as a certified police officer" and "in accordance with his duties" to Aurora, RI.182–83. And in her response to Aurora's motion to dismiss, Ms. Martinez argued Officer Harroun acted "[c]onsistent with his general law enforcement duties" RI.283.[8] Ms. Martinez takes the same position on appeal. "[T]here is no doubt," she says, that Officer Harroun's actions "map directly onto the core functions of his work as a law enforcement officer" and "were clearly within his 'bailiwick' as an officer employed by the City of Aurora." Resp. Br. at 19, 22 (quoting *Lindke*, 601 U.S. at 199).

We thus turn to the heart of the dispute about state action. Did Ms. Martinez plausibly allege Officer Harroun "possessed actual authority"? *Lindke*, 601 U.S. at 198. She did not.

According to the complaint, Officer Harroun identified himself as a police officer; provided his badge number; and displayed his badge. He allegedly said at the scene, "I'm arresting a lady who tried to pepper spray

---

[8] At the motion-to-dismiss stage, we can consider "mere argument contained in the parties' memoranda concerning a motion to dismiss" as an "exception[]" to the rule that a federal court may consider only facts alleged within the complaint. *MacArthur* v. *San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002) (internal quotation marks omitted); *see* 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. Nov. 2025 update) ("[M]emoranda of points and authorities as well as briefs and oral arguments in connection with the motion are not considered matters outside the pleadings for purposes of conversion.").

EXHIBIT 1

me." RI.192 (¶ 59). He told Ms. Martinez she was under arrest, not free to leave, and would be physically subdued if she did not comply with orders. RI.192. And he allegedly told responding officers he "was just trying to do [his] job." RI.195 (¶ 73). Based on these allegations, Ms. Martinez has plausibly pleaded only that Officer Harroun believed he had authority to engage in his specific conduct during the incident.

But Ms. Martinez has failed to plausibly plead Officer Harroun had actual authority. The complaint alleged Officer Harroun was on administrative leave at the time of the incident. The Leave Order instructed him to "not take any action as a sworn police officer[.]" RI.125; *see* Restatement (Third) of Agency § 2.02 cmt. c ("[T]he formality of the statement itself is relevant to, and often dispositive of, whether the agent could reasonably believe that the principal intended to consent to the agent's power to do acts beyond or other than those stated in the instrument."). Yet Officer Harroun's specific conduct during the incident consisted of the very activities the Leave Order expressly forbade. *See Lindke*, 601 U.S. at 199–200 (explaining a court must consider the official's "specific conduct" in light of "the scope of [the] official's power" (internal quotation marks omitted)); Restatement (Third) of Agency § 2.02 cmt. e (viewing the objective reasonableness of the agent's belief as to the scope of their authority "from the viewpoint of a reasonable person in the agent's

EXHIBIT 1

situation under all of the circumstances of which the agent has notice"). Ms.

Martinez has failed to plausibly plead it was objectively reasonable for an

officer told to "not take any action as a sworn police officer" to nevertheless

believe he had authority to undertake "quintessential police activities[.]"

Resp. Br. at 22; *see Matney* v. *Barrick Gold of N. Am.*, 80 F.4th 1136, 1147

(10th Cir. 2023) (affirming the dismissal of a complaint because plaintiffs

had "not create[d] a plausible inference" to support their claim (quoting

*Matousek* v. *MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022)));

*see also Twombly*, 550 U.S. at 570 (explaining a complaint "must be

dismissed" if it has not "nudged the[] claims across the line from conceivable

to plausible").

Because Ms. Martinez has failed to plausibly plead "this threshold

showing of authority, [s]he cannot establish state action[,]" and her § 1983

claim against Aurora fails as a matter of law. *Lindke*, 601 U.S. at 201; *see,

e.g.*, *Hall*, 584 F.3d at 867 (dismissing § 1983 claim because "the complaint

fail[ed] to allege state action"). We therefore agree with Aurora that the

district court erred in denying its motion to dismiss the claim.[9]

---

[9] When considering whether there was an abuse of discretion in denying Aurora's motion for reconsideration, we note the district court's change in approach to the existence of actual authority. Before *Lindke*, the district court ruled the complaint had not plausibly alleged actual authority. *See* RII.324 (finding Officer Harroun "did not have any actual authority to act"). After Aurora pointed out that, under *Lindke*, apparent

**B**

Ms. Martinez presents several counterarguments, but none are availing.

*First*, Ms. Martinez insists Officer Harroun "was acting under color of state law" because he "subjectively believed he was acting as a law enforcement officer, and Ms. Martinez and eyewitnesses understood him to be acting in that role." Resp. Br. at 18. This argument misunderstands the law. The Supreme Court clarified in *Lindke* that an individual cannot "conjure the power of the State through his own efforts." *Lindke*, 601 U.S. at 199. Actual authority requires the agent have both a subjective belief and an objectively reasonable belief that he could do the specific act at issue. *See 1-800 Contacts, Inc.*, 722 F.3d at 1251. Officer Harroun's subjective belief alone cannot establish state action. Further, the beliefs of third parties such as Ms. Martinez relate to *apparent* authority, not actual authority. *See Coreslab Structures*, 100 F.4th at 1136 ("Apparent authority

---

authority does not suffice to show state action, the district court ruled the complaint *had* plausibly alleged actual authority. *See* RII.398 ("Plaintiff has plausibly alleged that the City delegated actual authority to Defendant Harroun such that he was acting under color of law."). Ms. Martinez's complaint, however, had not changed. The district court did not explain why the same allegations now carried a different legal significance. *See HCG Platinum, LLC* v. *Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017) ("The district court's failure to explain its sharp change of analytic direction . . . in itself[] constitutes an abuse of discretion.").

EXHIBIT 1

turns on a third party's reasonable belief that the agent 'has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" (emphasis omitted) (quoting Restatement (Third) of Agency § 2.03)). Apparent authority alone does not satisfy the state-action requirement. *See Lindke*, 601 U.S. at 198.

*Second*, Ms. Martinez argues her pleadings plausibly establish Officer Harroun retained actual authority from a "policy" of Aurora's—specifically, the Off-Duty Policy. Recall, Ms. Martinez alleges that Officer Harroun "was on administrative leave at the time" of the attack but remained "subject to . . . the Off-Duty [Policy]." RI.202 (¶ 111). According to her complaint, the Off-Duty Policy requires "[s]worn members confronted with an off-duty situation" to "use discretion and good judgment in deciding if direct participation is necessary as opposed to summoning an on-duty police officer." RI.182. Ms. Martinez argues the Off-Duty Policy applied to Officer Harroun while he was on leave, meaning he retained "some level of actual authority" during the incident. Resp. Br. at 26. We are not persuaded.

To be sure, the district court found the Off-Duty Policy "ambiguous as to whether it applies to officers who are on leave[.]" RII.398. We disagree. Read alongside the Leave Order, the Off-Duty Policy is not "reasonably susceptible to more than one meaning[.]" *Pirkheim* v. *First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000) (internal quotation marks omitted). As

25
<span style="color:red">EXHIBIT 1</span>

Aurora points out, the Off-Duty Policy applies only to "*[s]worn members*." RI.182 (emphasis added). The Leave Order instructed Officer Harroun to "not take any action as a *sworn police officer*[.]" RI.125 (emphasis added). Reading the allegations in Plaintiff's favor, as we must at the motion-to-dismiss stage, Ms. Martinez fails to plausibly allege the Off-Duty Policy even applied to Officer Harroun during his administrative leave.

*Third*, Ms. Martinez argues Officer Harroun had actual authority because he was allowed to keep his badge. Aurora's custom of allowing officers to keep their badge while on leave, Ms. Martinez argues, indicates "some level of actual authority." Resp. Br. at 26. But even if Officer Harroun could *keep* his badge, the Leave Order unambiguously terminated his authority to *use* it. Again, the Leave Order instructed him to "not take any *action* as a sworn police officer[.]" RI.125 (emphasis added). That broad revocation of authority rendered objectively unreasonable Officer Harroun's belief he could use the badge as he did during the incident—to effectuate detention and arrest using force.[10]

---

[10] To the extent Ms. Martinez argues Officer Harroun retained authority from the mere fact he "remained employed by the Aurora Police Department" during the incident, Resp. Br. at 26, we are not persuaded. Mere employment status does not necessarily confer actual authority over a given act. A principal "may terminate all of an agent's actual authority, or only a portion of it." Restatement (Third) of Agency § 3.10 cmt. b. Indeed, "[a] principal may direct an agent to do or refrain from doing a specific act." *Id.* § 2.02 cmt. g. The dispositive question is whether Officer Harroun could

26
<span style="color:red">EXHIBIT 1</span>

*Fourth* and finally, Ms. Martinez seems to argue for an alternative-grounds affirmance. She contends, even if the pleadings do not plausibly allege *Officer Harroun* acted under color of law, Aurora "itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." Resp. Br. at 36 (bolding and italicization omitted) (quoting *Gibson* v. *City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). Although Ms. Martinez raised this argument at the district court, *see* RI.291–92, the district court did not rule on it. This argument therefore presents a basis for affirmance different than the one adopted by the district court. Ms. Martinez does not acknowledge the difference, and she cites no cases laying out the factors that guide our discretion whether to affirm on alternative grounds. Resp. Br. at 34–37; *see, e.g.*, *Elkins* v. *Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (setting forth factors that guide our discretion to affirm on an alternative ground). "Arguments inadequately briefed in the opening brief are waived[.]"[11]

---

"reasonably have believed" that Aurora's "grant of actual authority encompassed the act in question"—*i.e.*, the specific conduct he engaged in during the incident. *Id.* § 2.02 cmt. e. Under the circumstances, that Officer Harroun remained employed by Aurora while on administrative leave does not plausibly establish the authority Ms. Martinez claims he had when he attacked her. Nor does Ms. Martinez develop an argument otherwise.

[11] Even if we overlooked the inadequate briefing, we would decline to reach the argument for a different reason. Ms. Martinez argues Aurora can be held liable "even in the absence of any underlying constitutional violation

27
EXHIBIT 1

*Adams* v. *FAA*, 168 F.4th 1271, 1285 (10th Cir. 2026) (internal quotation marks omitted); *see Tachias* v. *Sanders*, 130 F.4th 836, 843 (10th Cir. 2025) (explaining the Federal Rules of Appellate Procedure require an appellee's brief to include "citations to the authorities" on which the appellee relies (quoting Fed. R. App. P. 28(a)(8)(A))). We thus "decline to reach any potential alternative grounds to affirm not ruled on by the district court." *Parker Excavating, Inc.* v. *Lafarge W., Inc.*, 863 F.3d 1213, 1225 n.13 (10th Cir. 2017).[12] Because the district court did not address Ms. Martinez's argument that Aurora itself is the state actor for purposes of her § 1983

---

by Harroun[.]" Resp. Br. at 35. Our precedent recognizes such a "systemic" theory of municipal liability, in which "plaintiffs need not demonstrate an individual officer committed a constitutional violation" because "the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Est. of Burgaz ex rel. Zommer* v. *Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1189 (10th Cir. 2022) (quoting *Garcia* v. *Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985)). However, "such a claim represents a different theory of municipal liability." *Thao* v. *Grady Cnty. Crim. Just. Auth.*, 159 F.4th 1214, 1233 n.13 (10th Cir. 2025). Ms. Martinez's complaint did not allege such a "systemic" theory; rather, Ms. Martinez brought a claim against Aurora for "Failure to Hire, Investigate, Train, Supervise, and Discipline[.]" RI.229 (bolding omitted). Where, as here, a plaintiff "never pleaded a systemic-failure claim in its complaint," we may exercise our discretion and "decline to create one on appeal." *Thao*, 159 F.4th at 1233 n.13.

[12] Because we reverse the denial of the motion to reconsider on the basis that Ms. Martinez fails to plausibly plead Officer Harroun had actual authority, "we need not address [Aurora's] other arguments for reversal." *United States* v. *Hatley*, 153 F.4th 1112, 1129 n.12 (10th Cir. 2025).

28

EXHIBIT 1

claim, we leave that argument for the district court to consider on remand. *See Pac. Frontier* v. *Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) ("Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially.").

## V

We **REVERSE** the district court's denial of the motion to reconsider and **REMAND** for further proceedings consistent with this opinion.

29
EXHIBIT 1