No. 25-7082

IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

BARBARA BARRICK, as Special Administrator of the ESTATE OF BOBBY DALE BARRICK, deceased,

Appellant / Plaintiff,

v.

DEPUTY MATTHEW KASBAUM; DEPUTY QUENTIN LEE; and WARDEN MARK HANNAH,

Appellees / Defendants.

Appeal from the United States District Court for the Eastern District of Oklahoma

Case No. 23-CV-129-JFH-GLJ. Hon. John F. Heil, III

# SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLEE WARDEN MARK HANNAH

Devan Pederson, OBA #16576
Jesse S. Ogle, OBA #34275
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
T: (405) 521-3921 | F: (405) 521-4518
devan.pederson@oag.ok.gov
jesse.ogle@oag.ok.gov
Attorneys for Defendant-Appellee Warden Mark Hannah
August 24, 2026

**SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLEE WARDEN MARK HANNAH**

Defendant-Appellee Warden Mark Hannah ("Hannah") submits this supplemental brief in accordance with the Court's August 13, 2026 Order, which directs the parties to file simultaneous supplemental briefs addressing the effect on this appeal of the Court's recent decision in *Walden v. City of Duncan*, No. 25-6153, 2026 WL 2329610 (10th Cir. Aug. 12, 2026).

In *Walden*, the Duncan Police Department received a call about a suspicious man inside a convenience store who had twice dropped a firearm. The store sat within the boundaries of the Chickasaw Nation. The Department and the Chickasaw Nation had an agreement allowing cross-commissioned Duncan police officers to enforce tribal law in the Chickasaw Nation. *Walden*, 2026 WL 2329610 at *2. Officer Christian Archer responded. He was cross-commissioned by both the City of Duncan and the Chickasaw Nation. *Id.* Archer suspected that the driver, Shawn Walden, was intoxicated. Archer had Walden perform field sobriety tests. Based on those tests, Archer arrested Walden. He then read Walden Oklahoma's Implied Consent Test Request. He asked Walden to submit to a blood test under Oklahoma law. He warned that a refusal would cost Walden his driving privileges. *Id.* Archer treated Walden's response as a refusal. He seized a firearm from the vehicle. He took Walden to the Stephens County Jail. There, Walden was booked on two Oklahoma charges. Those charges were actual physical control of a vehicle while intoxicated and carrying a firearm while under the influence. *Id.*

Walden's tribal status did not surface until booking. Officers then learned that Walden was a member of the Choctaw Nation. Because Walden was an Indian and the alleged crimes occurred in Indian country, Oklahoma courts lacked criminal jurisdiction over him. *Id.* Archer then completed a Chickasaw Nation probable cause affidavit. It accused Walden of violating the Chickasaw Nation code. The tribal prosecutor filed charges, and the Tribe later dismissed them. *Id.*

Walden then brought a § 1983 false-arrest claim against Archer. He alleged that Archer arrested him on a false claim of intoxication. At oral argument, his counsel described the claim as challenging only the initial arrest and the lack of probable cause. *Id.*

The district court granted summary judgment for the defendants. It ruled that Archer acted under color of tribal law rather than state law. On that basis, the district court held that Walden could not satisfy § 1983.

On appeal, this Court reversed the district court's grant of summary judgment and remanded for further proceedings. The Court held that the district court ruling was based on a "misconception of the applicable law." *Id.* at *1. The district court had concluded that the officers lacked *any* state law authority over Walden. However, this Court found that the Supreme Court's decision in *United States v. Cooley*, 593 U.S. 345 (2021) applied not only to tribal officers, but—in the opposite direction—to state officers such that state officers *do* have actual state authority to stop and detain Indian suspects in Indian country while conducting an "initial investigation," and further, they may also "either hold him until the arrival of tribal officers or transport him to tribal authorities."

*Id.* at *5.[1] Because the district court did not recognize the possibility that the officers had some actual state authority, this Court reversed and remanded for further proceedings without making a determination whether the officer had exercised state authority.

The Court did confirm that based on *Martinez v. City of Aurora*, the test for color of state law (state action) asks whether the officer: (1) ***possessed actual authority*** to take the action on the State's behalf, and (2) ***purported to exercise that authority***. 174 F.4th 745, 755 (10th Cir. 2026); *see Walden*, 2026 WL 2329610, at *3. It is only when a plaintiff shows *both* elements that there is state action.

Finally, the court flagged one open question. The evidence might show that Archer acted under both tribal and state law. The court declined to decide whether § 1983 would apply in that situation. *Walden*, 2026 WL 2329610, at *5.

The primary teaching of *Walden* is that state officers *do* have actual authority over Indians in Indian country so long as they are acting within the bounds set for tribal officers interacting with non-Indians in *Cooley*. That is, state officers *do* have actual state authority to stop and detain Indian suspects in Indian country while conducting an "initial

[1] This latter point, if not the former, was a ruling of first impression in this Circuit. Prior to *Walden*, a reasonable officer likely would have believed his state authority to have been circumscribed by the outer bounds noted in *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000 (10th Cir. 2015) and *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990). In *Ute*, the Court indicated that state officers may "refer[] suspected offenses by Indians to tribal law enforcement," and "adjudicat[e] disputes over the Indian status of accused traffic offenders when meaningful reasons exist to question that status." *Id.* at 1007. *Ute* said nothing about the ability to hold and transport once tribal status was determined. In *Ross*, the Court indicated that state officers lacked state authority to arrest Indians in Indian country, and that such an extra-jurisdictional arrest violates the Fourth Amendment and is actionable under § 1983. *Ross*, 905 F.2d at 1352–54.

investigation," and further, they may also "either hold him until the arrival of tribal officers or transport him to tribal authorities." *Id.* at *5.

In the case at bar, the complained-of actions all came after the officers determined that Barrick was an Indian, and Plaintiff does not assert that anything improper occurred during an "initial investigation." Thus, the part of *Walden* holding that state officers have actual state authority over Indians for purposes of an "initial investigation" has no effect on the case at bar.

However, the part of *Walden* holding that state officers have a hold-and-transport authority over Indians in Indian country even after their status as an Indian is known, could invite further consideration of the issue of whether the officers involved in the case at bar could have used actual state authority to use force against Barrick in attempting to have him assessed by medical personnel. Whether this is within the post-Indian-status determination hold-and-transport-to-the-proper-authorities power outlined in *Walden* is far from clear. Ultimately, however, the Court need not grapple with that question because the district court's judgment may be affirmed on other grounds. First and foremost, the judgment in this case should be affirmed on the second requirement for color of state law: the requirement that a defendant must "purport to exercise" state authority. *See Walden*, 2026 WL 2329610, at *6 (quoting *Lindke v. Freed*, 601 U.S. 187, 201 (2024)). There is insufficient evidence in the record showing that Hannah "purported to exercise" state authority. In addition, Barrick was also required to show not only that the officers *could* have used actual state authority during the use-of-force encounter, but also that they actually *did* use state authority in that encounter. *See Martinez*, 174 F.4th at

759 (recognizing that an officer's "subjective belief" about his authority may be relevant to whether he possessed actual state authority). But here there is no evidence that Hannah had a "subjective belief" that he was acting under his limited state law authority rather than his plenary tribal authority. And finally, Barrick staked her case on apparent authority and disclaimed the need to show actual authority. Relying on *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995), she argues that she "need not prove that Appellees had actual legal authority to arrest Decedent under state law" and "need only show that Appellees were clothed in the apparent authority of state law." Aplt. Reply Br. 3. Her briefs advance little if any argument that the officers possessed actual authority under state law to detain or arrest Barrick at the scene—the element *Walden* identifies as the threshold requirement for color of state law. *See Walden*, 2026 WL 2329610, at *3; *Martinez v. City of Aurora*, 174 F.4th 745, 755 (10th Cir. 2026). For these reasons, the judgment below should be affirmed.

As indicated above, the factual record lacks sufficient evidence to overcome summary judgment on the "purporting" requirement of state action and, for the same reasons, on the "subjective belief" component of actual authority. As Judge Matheson points out in his concurrence, color of state law is an element of a § 1983 claim. *Walden*, 2026 WL 2329610, at *8 (Matheson, J., concurring). Where a plaintiff lacks evidence to support an essential element of her claim, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). In order to avoid summary judgment, the plaintiff must come forward with specific facts and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A "mere scintilla" will not do; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

On these facts, a reasonable jury could not find for the Plaintiff. Here, Hannah knew Barrick was an Indian before any use of force occurred. There is nothing in the record showing that Hannah chose to use his state authority—an authority limited by *Ross v. Neff*, *Ute*, and now *Cooley*—when he possessed an unlimited Choctaw commission that covered all of his actions. True, he was wearing his own agency's uniform and driving its vehicle. But that would be the case in nearly every cross-commission situation. This does not mean he had decided to use his limited state authority. The uniform and vehicle show who employed Hannah, not which authority he invoked. It is "the source of the power, not the identity of the employer" that matters. *Lindke v. Freed*, 601 U.S. 187, 196 (2024). Thus, because the uniform and vehicle are equally consistent with the exercise of tribal authority, they do not, on this record, permit a reasonable inference that Hannah purported to exercise state authority.

This is very different from the facts in *Walden*. In *Walden*, the cross-commissioned officer's purported exercise of state authority rested on a series of specific acts applying Oklahoma law to the arrestee. He administered Oklahoma field sobriety tests he was trained by the State to perform. He read the arrestee Oklahoma's Implied Consent Test Request, offering the statutory choice between the State's chemical test and revocation of his driving privileges. He completed a state form seeking revocation of the arrestee's license under state law. He transported the arrestee to county jail, where the

arrestee was booked on Oklahoma criminal charges. *Walden*, 2026 WL 2329610, at *6. It appears the officer took those steps because he did not attempt to discern the arrestee's tribal status until booking. Up to that point, he treated the encounter as a state case, and the arrestee as a non-Indian. *See Walden*, 2026 WL 2329610, at *3. On that record, the court could not say as a matter of law that the officer had not purported to exercise state authority. *Walden*, 2026 WL 2329610, at *6.

This record contains none of those acts. Hannah administered no field sobriety test. He read no implied-consent advisory and invoked no state chemical-testing or license-revocation procedure. He completed no state citation, charging instrument, or other form applying Oklahoma law to Barrick. He sought no state charge, and he booked no one into any state facility. In short, Hannah never purported to apply Oklahoma law to Barrick in any way. In addition, unlike the officer in *Walden*, Hannah knew Barrick was an Indian before he acted. Aplt. App. 785–86.

On this record, a reasonable jury could not find that Hannah purported to exercise the authority of the State of Oklahoma. Therefore, summary judgment for Hannah is appropriate on this ground.

Finally, the Court need not decide the question reserved in *Walden* regarding whether § 1983 applies when an officer acts under color of both tribal and state law because here there is no evidence that Hannah exercised any actual Oklahoma authority over Barrick at all. With no state-law conduct in the record, there is no "both authorities" situation to analyze, and the reserved question can be left for another case.

To the extent the Court reaches the question, however, Hannah's position is that a cross-commissioned officer should ordinarily be treated as acting under one authority or the other, not both. When an officer holds commissions from two governments, the two commissions do not operate at the same time. Which one applies depends on the status of the suspect and the law the officer is enforcing. During the opening moments of an encounter, before the officer knows whether the suspect is an Indian, he should not be deemed to be exercising both authorities at once merely because he does not yet know which authority actually applies. That uncertainty is the very reason cross-commissions exist. They let the officer conduct an initial investigation without having to decide, at the outset, whose authority he is using. Once the officer learns the suspect's tribal status, he should be deemed to have acted under the authority that has full, plenary power over that suspect—not under the secondary, limited authority. Here, that is the tribal commission.

Even if the Court were to treat the officer as acting under both authorities during the brief pre-determination window—on the theory that he did not yet know which one governed—the analysis should not stay there. Once the officer determines the suspect's status, he will almost always, absent unusual facts, be exercising the commission that matches that status: the state commission when the suspect is a non-Indian, and the tribal commission when the suspect is an Indian in the territory where the tribe's authority runs. The only situations in which an officer could fairly be said to have chosen the limited authority over the plenary one are unusual. For example, where the officer says he is acting under the limited commission for some particular reason, or where, despite

knowing the suspect's status, he actually tries to enforce the limited government's law instead of the plenary government's law. Neither happened here.

The more workable rule is a practical presumption. Absent some indication from the officer that he was invoking the limited-authority government's power, he should be deemed to have exercised the plenary-authority government's power. That presumption should apply even to the earliest part of the encounter, before the officer confirmed the suspect's status, so that the officer's authority is characterized consistently rather than split moment-by-moment. This approach is more predictable for officers, courts, and litigants alike, and it fits how cross-commissioned policing actually works. An officer who holds both commissions need not fix the suspect's status at the threshold. In the ordinary case that question becomes important only when it is time to file a charge, because that is when the officer must decide whether probable cause exists under tribal law or under state law. Tribal and state law often overlap, but they are separate bodies of law, and it is at the charging stage—not the initial encounter—that the choice between them ordinarily has to be made. On this record, everything points to tribal authority, and nothing suggests Hannah ever reached for Oklahoma's.

For all of these reasons, the judgment below should be affirmed.

Respectfully submitted,

/s/ Devan Pederson
Devan Pederson, OBA #16576
Jesse S. Ogle, OBA #34275
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division

313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
devan.pederson@oag.ok.gov
jesse.ogle@oag.ok.gov
Attorneys for Defendant-Appellee Warden Mark Hannah

## CERTIFICATES

**Service.** I hereby certify that a copy of the foregoing Supplemental Brief of Defendant-Appellee Warden Mark Hannah was served, on August 24, 2026 via filing with the Clerk of Court using the CM/ECF System, on all counsel who are registered CM/ECF users and have entered their appearance in this appeal.

/s/ Devan Pederson

Devan Pederson

**Type-Volume and Typeface Limitations.** I hereby certify that:

This supplemental brief complies with the page limitation set by this Court's August 13, 2026 Order (Doc. 79) because it does not exceed ten pages, excluding the parts exempted by Fed. R. App. P. 32(f); and,

This supplemental brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in fourteen-point Times New Roman font.

/s/ Devan Pederson

Devan Pederson

Date: August 24, 2026